UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 96-00075-CR-COHN

UNITED STATES,

        Plaintiff,

vs.

JULIO LOPEZ,

        Defendant.

_____/

### ORDER DENYING DEFENDANT'S PRO SE MOTION TO DISMISS WITH PREJUDICE THE INDICTMENT FOR VIOLATION OF THE SPEEDY TRIAL CLAUSE OF THE INTERSTATE AGREEMENT ON DETAINERS ACT AND SPEEDY TRIAL UNDER SIXTH AMENDMENT OF THE U.S. CONSTITUTION

**THIS CAUSE** is before the Court on Defendant's Pro Se Motion to Dismiss with Prejudice the Indictment for Violation of the Speedy Trial Clause of the Interstate Agreement on Detainers Act and Speedy Trial Under Sixth Amendment of the U.S. Constitution [DE 1483] ("Motion"). The Court has carefully reviewed the Motion, the Government's Omnibus Response [DE 1488] ("Response"), the record, the evidence presented at a hearing on July 15, 2011, the arguments of counsel, and is otherwise advised in the premises.[1]

### INTRODUCTION

Defendant Julio Lopez ("Lopez") moves this Court to dismiss the indictment in the instant criminal action. He claims that the United States ("Government") has failed

_____

[1]    At the time the Defendant filed the instant motion, he had been representing himself pro se. As of May 18, 2011, Defendant has been represented by CJA court appointed counsel.

to bring him to confront the charges pending against him in a timely manner, thus depriving him of his statutory and constitutional rights to a speedy trial.  He alleges violations under 1) the Interstate Agreement on Detainers Act ("IADA") and 2) the Sixth Amendment of the United States Constitution.

As discussed more fully below, Lopez's statutory claim under the IADA, and constitutional claim under the Sixth Amendment fail as a matter of law.  As such, the Court will deny Lopez's Motion.

BACKGROUND

On October 16, 1998, a federal grand jury returned a third superseding indictment, adding Defendant Julio Lopez, among others, to the case, <u>United States v. Alujas, et. al.</u>  <u>See</u> DE 836.  Specifically, the case charged thirty-four defendants, each with varying degrees of participation, in "a conspiracy to reap hundreds of thousands of dollars in profits from a criminal enterprise involved in robbing and extorting drug traffickers."  <u>Id.</u> at 3.  In particular, the instant indictment charged Lopez with conspiracy and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), as well as extortion, robbery, and obstruction, in violation of 18 U.S.C. §§ 1953 and 2.[2]  <u>Id.</u>  An arrest warrant was issued for Lopez on the same day that the indictment was filed.  <u>See</u> DE 848.

At the time the arrest warrant was issued, Lopez was incarcerated at Eglin Federal Prison Camp ("Eglin"), serving a 70-month sentence on an unrelated drug

---

[2]     A fourth superseding indictment was filed on April 16, 1998.  That indictment added a co-defendant to the case, and detailed additional accounts in furtherance of the criminal enterprise, but it did not alter the charges against Lopez.  <u>See</u> DE 1040.

conviction.[3]  Motion at 2.  On November 23, 1998, Lopez escaped from Eglin before the

Government could execute its arrest warrant against him.  Response at 2.  The

following day, November 24, 1998, the United States District Court for the Northern

District of Florida issued an arrest warrant for Lopez charging him with willful escape

from a federal corrections institution in violation of 18 U.S.C. § 751(a).[4]  United States v.

Lopez, Case No. 09-CR-00021-MCR-EMT (N.D. Fla. November 24, 1998) (DE 1).  Id.

For the next ten years Lopez remained a fugitive from justice.  See id. at DE 2.

On December 17, 2008, the United States Marshals Service in Houston, Texas

arrested Lopez.  Id.  Although the Southern District and Northern District of Florida each

had outstanding arrest warrants for Lopez, the United States Marshal Service only

executed the warrant issued by the Northern District of Florida.  Upon return to the

Northern District of Florida, Lopez pled guilty to one count of escape and was

sentenced to 15 months imprisonment consecutive to the 70 month sentence imposed

by Judge Zloch referred to above.  Id. at DE 22.

The warrant for the instant indictment remained unnoticed for 14-months

following Lopez's arrest.  Finally, on February 8, 2010, the United States Marshals

Service lodged a detainer against Lopez. Motion at 1.  The detainer notified prison

───────────────

[3]      On February 27, 1998 Lopez pled guilty in the United States District Court for the
Southern District of Florida on one count of possession with intent to distribute cocaine in
violation of 21 U.S.C. § 841(a)(1).  United States v. Lopez, Case No. 97-CR-08110-WJZ (DE
66).

[4]      The report on Lopez's disappearance reflects that Lopez was discovered missing
during a "bed count"and that upon investigation, a "Detail Supervisor" disclosed that he had
seen Lopez "walk off" the premises earlier that afternoon.  United States v. Lopez, Case No. 09-
CR-00021-MCR-EMT (N.D. Fla. February 26, 2009) (DE 16).

authorities that the Southern District of Florida had an outstanding arrest warrant for possession with intent to distribute cocaine, and requested, "Prior to the subject's release from your custody, please notify [the United States Marshals Office] at once so that [it] may assume custody if necessary." Id. That detainer also advised, "The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this detainer because the subject is not currently serving a sentence of imprisonment . . . ."[5] Id.

On February 16, 2011, Lopez filed the instant motion with this Court.[6] See Motion at 1. Lopez seeks dismissal of the indictment for violations of his right to a speedy trial under the IADA and Sixth Amendment of the United States Constitution; or

---

[5]    In this case, it appears that the United States Marshals Service used  Form USM-16A to notify ACCC of the detainer against Lopez. See Motion at 17. Form USM-16A is the form that the Marshals Service uses to file a detainer against unsentenced prisoners who have outstanding federal arrest warrants. See USMS Directives – Fugitive Investigations, http://www.usmarshals.gov/foia/Directives-Policy/Fugitive%20Investigations/8.2.pdf (last visited June 12, 2011) ("USMS Directives"). It should have used USM-17B, the form used for sentenced federal prisoners. Id. USMS Directives specifically state that the use of form USM-17B is required because "although the IADA does not apply to sentenced federal prisoners, these prisoners still need to be advised of their right to a speedy trial under 18 U.S.C. §3161." Id. Additionally, according to USMS directives, "once a detainer based upon an untried offense is filed, [the agent must] notify the case Assistant U.S. Attorney of the place of confinement of the prisoner and the date the detainer was filed, and provide a copy of the detainer to him or her. . . ." Id.

[6]    Because the detainer did not reference a case number, Lopez, filed the instant motion, under his prior Southern District of Florida case number. See United States v. Lopez, Case No. 97-CR-08110-WJZ, (S.D. Fla. February 16, 2011 (DE 105). Judge Zloch denied that motion for lack of jurisdiction. See id. at DE 106. Upon Lopez's request for clarification, Judge Zloch declared, "It appears Defendant is seeking relief in case 96-00075-CR-COHN and the instant motions have been filed in the wrong case." Id. at DE 110. On April 18, 2011, the Clerk of the Court refiled the instant motion in the proper chambers per Judge Zloch's order. Id.

in the alternative, he requests that "the district court immediately order the United States to bring him before a Magistrate Judge for an arraignment hearing and appointment of counsel as guaranteed by the Constitution." Motion at 15.

First, Lopez argues that the indictment should be dismissed because of the Government's failure to notify him of his statutory speedy trial rights; as well as its failure to bring him to trial within 180-days of his request to resolve the charges on the instant indictment, constitute a violation under the IADA. Second, Lopez argues that the indictment should be dismissed because the Government's more than two-year delay in executing its arrest warrant on the instant charges since his arrest in Texas, violates his right to a speedy trial under the Sixth Amendment of the United States Constitution.

Upon receipt of Lopez's Motion to Dismiss, the Government timely filed its Omnibus Response. On May 18, 2011, the United States Marshals Service arrested Lopez on the instant charges. See DE 1493. That same day, Lopez appeared before Magistrate Judge Lurana S. Snow and was appointed counsel. See DE 1494-95. Additionally, on May 24, 2011, Lopez pled "Not Guilty" before Magistrate Judge Robin S. Rosenbaum. See DE 1498. Jury trial was set for June 27, 2011. DE 1500. On June 20, 2011, the Court granted a sixty-day continuance pursuant to Lopez's unopposed motion.[7] DE 1508. The trial date is currently set for August 15, 2011.

A hearing on the Motion was held on July 15, 2011. At the hearing, the Government presented two witnesses. Lopez elected not to testify or call any witnesses. In addition, the Court heard oral argument.

---

[7]     In that unopposed motion, Lopez also represented that his other pro se motions are moot. DE 1506.

5

First, the Government called Ariel Hernandez, a co-defendant and friend of Lopez, who testified that, in 1998, he informed Lopez of the indictment against him. He stated that either in late October or November of that year, he received a phone call from Lopez, and during that conversation, he not only told Lopez that they both had been charged in the indictment, but he also agreed to meet with two of Lopez's friends for the purposes of showing them the indictment. Mr. Hernandez also testified that at the time that he received the phone call from Lopez he believed that Mr. Lopez was in prison serving a sentence on another drug conviction. Given this belief, he revealed that he had been "surprised" when Lopez "showed up" at his house approximately "a month to a month-and-a-half later", asking to stay with him.

Next, the Government presented Juan Sanchez, a detective with the Miami-Dade Police Department who participated in the joint task force with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to investigate and arrest the co-defendants in this case. Specifically, Detective Sanchez, recounted the efforts the task force took to apprehend Lopez once it learned that Lopez had escaped from Eglin. He stated that because the task force had received information that family had assisted Lopez in his escape, he proceeded to conduct surveillance on, and track phone calls of, family members. Based on this intelligence, he learned that Lopez had fled to Mexico. Upon receiving that information, he immediately notified the Mexican authorities and continued to investigate Lopez's whereabouts. Dectective Sanchez also stated that approximately six months to a year after the escape, he learned that Lopez was back in the United States, either in Texas or California, and that he alerted the United States Marshal Service. According to Detective Sanchez, the trail on Lopez eventually went

6

cold.

Finally, despite the lack of new information on Lopez's location, the Government presented evidence to show that ATF continued to search for him.  The Government submitted ATF records dated from January 1999 through April 2009 corroborating that every six months, an agent validated the warrant, and utilized specialized databases such as NCIC, TECS, and AutoTrack to investigate Lopez.

## DISCUSSION

Lopez's IADA and Sixth Amendment claims are discussed below.

### I. THE INTERSTATE AGREEMENT ON DETAINERS ACT

The Interstate Agreement on Detainers Act ("IADA") is a compact among 48 states, the United States, and the District of Columbia.[8] See 18 U.S.C. App. 2, § 2 (2006). The agreement prescribes procedures by which each of the member States shall effectuate "the expeditious and orderly disposition" of charges which are pending against a prisoner outside of the jurisdiction in which the prisoner is incarcerated. See United States v. Mauro, 436 U.S. 340, 343 (1978).

Specifically, the agreement, codified at 18 U.S.C. Appendix 2, §2,  provides, in relevant part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of

---

[8]     To date, neither the state of Mississippi, nor the state of Louisiana have joined the IADA. See 18 U.S.C. Appendix 2, § 2.

his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint . . . .

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

18 U.S.C. App. 2, § 2, Article III (2006).

By its terms, the protections of the IADA attach when a prisoner in "a party State" becomes subject to a detainer in "another party State." See id. When that condition is met, the warden of the correctional institution in which the prisoner is incarcerated is required to notify the prisoner of all outstanding detainers lodged against him; and must inform the prisoner of his right to request final disposition of the criminal charges underlying those detainers. See id. Furthermore, if the prisoner demands final disposition of the charges, the jurisdiction that filed the detainer must bring the prisoner to that jurisdiction for trial within 180 days of its receipt of that request. See id. Absent good cause shown, a violation of these terms results in the dismissal of the charges. See Carchman v. Nash, 473 U.S. 716, 721 (1985).

Under the IADA, the statutory term "State" is defined to mean 1) the United States; 2) a state of the United States; 3) the District of Columbia; 4) Puerto Rico; or 5) a territory of the United States. See 18 U.S.C. App. 2, § 2, art. II(a). As such, Congress intended the IADA to apply, subject to certain limitations, to transfers of sentenced

8

prisoners between "States." See id. It did not intend for the statute to apply to the transfer of a prisoner from one federal district to another. See, e.g., United States v. Walling, 974 F. 2d 140, 141 (10th Cir. 1992) ("[T]he IADA has no application if a prisoner in federal custody in one federal district faces another federal indictment in a different federal district."); United States v. Stoner, 799 F. 2d. 1253, 1256 (9th Cir. 1986) ("[T]he IADA does not apply to detainers filed by federal authorities against federal prisoners."); United States v. Krohn, 558 F. 2d 390, 392 (8t Cir. 1977) (the United States is one "State" under IADA). The Eleventh Circuit has also held that for the purposes of the IADA, the several federal districts within the United States are considered one jurisdiction; and therefore, the IADA is not applicable to federal prisoners with outstanding federal charges. Hunter v. Samples, 15 F. 3d 1011, 1012 (11th Cir. 1994).

Lopez claims that dismissal of the indictment is required because the Government violated his rights under the IADA when it did not afford him the speedy trial and notice requirements provided by the statute. Lopez contends that the "United States activated the speedy trial clause [of the IADA] when the United States Marshal issued [the] detainer against [him] even though the detainer falsely claimed that [he] was not serving a term of imprisonment." Motion at 13. Additionally, he contends that the "parties with the power to grant him relief, failed to do so" despite the fact that he "requested that he be brought to answer [the] charges." Id at 14. Stated differently, Lopez argues that a violation of the IADA occurred, first when the officials having custody of him failed to advise him of his right to make a request for final disposition of the indictment; and later when the United States Attorney's Office in the Southern District of Florida failed to bring him to trial within 180 days of his written requests to

9

resolve the charges.

Lopez, however, has misapplied the law to his specific circumstances.  In presuming that he is entitled to the protections of the IADA, he has improperly expanded the scope of the IADA to apply to any prisoner who has a detainer filed against him.  Yet in this case, the statutory speedy trial and notice requirements provided by the IADA do not apply to Lopez.  Lopez is a federal prisoner, and was subject to a detainer on outstanding federal charges. Therefore, Lopez has failed to establish a violation of the IADA and dismissal of the indictment must be denied.[9]

## II. SIXTH AMENDMENT

The Sixth Amendment of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. Const. Amend. VI.  Recognizing that the Sixth Amendment is a fundamental right deserving a drastic remedy which requires dismissal of the indictment when that right has been denied, the Supreme Court in Barker announced a four-part balancing test to determine whether a defendant's right to a speedy trial has been violated.[10]  Barker v.

---

[9]    The Government argues in its Response that the IADA did apply to Lopez. See Response at 4-5. Citing Fex v. Michigan, 507 U.S. 43, 52 (1993), it reasons that Lopez is not entitled to relief under the IADA because notice was never properly delivered to the prosecuting attorney's office. Id. at 5. The Court does not address this argument as the Court finds the IADA does not apply.

[10]    The Supreme Court notes that such remedy is severe and unsatisfactory given that a defendant who may be guilty of a serious crime will go free without having been tried, but it also indicates that the "amorphous quality of the right" makes it the only possible remedy. Barker, 407 U.S. at 522. It further acknowledges, "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Id. (quoting Beavers v. Haubert, 198 U.S. 77, 87 (1905)).

Wingo, 407 U.S. 514, 530 (1972) (internal citations omitted).   Under the Barker test, the

four factors to consider include: 1) the length of the delay; 2) the reason for the delay; 3)

the defendant's assertion of his right; and 4) the prejudice to the defendant.[11]  Id. at 532.

No one factor is either necessary or sufficient to determine whether the right has been

violated; rather each of the factors are interrelated and must be considered collectively

within the context of the relevant circumstances.  Id. at 533.

    To trigger a Barker analysis under the Sixth Amendment, an accused must allege

that the first factor, the length of delay, "crosses the threshold dividing the ordinary from

the presumptively prejudicial."  Doggett v. United States, 505 U.S. 647, 652 (1992).

Once a court determines that this threshold has been satisfied, it may examine the

remaining Barker factors.  Id.  Significantly, the burden is on the government to explain

the second factor, the reason for the delay.  See United States v. Ingram, 446 F. 3d

1332, 1337 (2006).  For all the other factors, the burden is on the defendant.  Id.

    Generally, a defendant cannot establish a Sixth Amendment speedy trial claim,

however long the delay, if the government has pursued its prosecution with "reasonable

diligence," and the defendant fails to show that the delay resulted in "specific prejudice

to his defense."  Doggett at 656.  Moreover, this Circuit requires a defendant to show

actual prejudice unless the first three Barker factors weigh heavily against the

government. See Ingram at 1336.

    Lopez asserts that all of the Barker factors weigh heavily against the

---

[11]    The Supreme Court subsequently revisited and reaffirmed the Barker test in
United States v. Doggett, 505 U.S. 647 (1992), but restated the factors as "whether delay before
trial was uncommonly long; whether the government or the criminal defendant is more to blame
for that delay; whether, in due course the defendant asserted his right to a speedy trial; and
whether the defendant suffered prejudice as [a result of the delay]."  Doggett at 651.

Government, and therefore the indictment should be dismissed. Id. The Government concedes that the Barker test is the appropriate test to consider whether Lopez's Sixth Amendment violation has occurred. See Response at 5. Similarly, the Government concedes that the length of the delay, the first Barker factor weighs heavily against the Government. Id. at 6.

According to the Government, however, Lopez's Motion should be denied because he has not demonstrated any specific prejudice. Response at 8. Relying on the established Eleventh Circuit rule that a defendant must show specific prejudice unless the first three Barker factors weigh heavily against the government, it asserts that the majority of the delay is attributable to Lopez's escape from Eglin, and thus the reasons for delay weigh more heavily against Lopez rather than the Government. Id. at 7. To support this assertion it argues, "Where, as here, the government has pursued its prosecution with reasonable diligence, specific prejudice must be shown by the defendant even if there had been a lengthy period of delay." Id. (emphasis in the original).

At issue then, remains the reason for the delay; whether the defendant asserted his right to a speedy trial; and the prejudice the defendant has incurred. The Court, therefore, will examine each of the Barker factors in turn.

## A. The Length of Delay

As mentioned above, Lopez contends, and the Government concedes, that the length of delay weighs heavily against the Government. Lopez and the Government, however, calculate the length of delay differently. Lopez calculates the length of delay

12

as more than two years,[12] Motion at 6, while the Government calculates the length of delay as twelve years, Response at 6.  Because the length of delay is calculated from the date of accusation to trial, the Court agrees with the Government.

In this case, the indictment was returned on October 16, 1998.  The date of trial is August 15, 2011.  As such, the length of delay is over twelve years.  Given that one year is considered to be presumptively prejudicial in this Circuit, the first factor weighs heavily against the Government.

## B. The Reason for the Delay

In assessing the second factor of the Barker analysis, the Court must determine whether the defendant or the Government is more responsible for the delay.  Doggett at 651.  Different weights are assigned to different reasons for the delay.  Barker at 531.  First, when the prosecution "deliberate[ly] attempts to delay the trial in order to hamper the defense," the reason for delay should be weighed against the government.  Barker at 531.  Second, when negligence is the cause of the delay, the reason for delay should be weighed less heavily . . . but should nevertheless be considered because it still "falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun . . . ."  Doggett at 531-32.  Third, when the government is unable to arrest a defendant because of the defendant's own evasive actions, the reason for delay should be weighed heavily against the defendant. See Doggett at 653; see also United States v. Bagga, 782 F. 2d 1541, 1543 (11th Cir. 1986); Rayborn v. Scully, 858 F. 2d 84, 92 (6th Cir.1988) ("A court may not ignore a

---

[12]    Lopez uses the date of his arrest in Houston, Texas as the starting point for his calculation.

defendant's fugitivity in considering whether there has been a violation of his sixth amendment right to a speedy trial).

In this case, the Court has identified three distinct periods of delay within the total twelve year post-indictment delay in bringing the defendant to trial: 1) the almost six week delay when the government failed to execute its arrest warrant against Lopez, and before he escaped from Eglin ("Pre-Escape"); 2) the ten year delay beginning with Lopez's escape from Eglin until his capture by the United States Marshal Service ("Escape"); and 3) the 30-month delay after Lopez's arrest on the escape charge, leading up to the trial date ("Post-Escape"). The Court will evaluate each of these discrete periods of delay and assign fault for each portion of the delay.

### 1. Pre-Escape

During this approximately six week period of delay, Lopez alleges that the Government intentionally delayed executing its arrest warrant against Lopez for the purpose of turning his co-defendants into witnesses against him. Counsel argues that such a deliberate delay was an improper attempt to gain a tactical advantage over the defendant.

In response, the Government concedes that it knew that Lopez was incarcerated at Eglin when the indictment was issued, but it explains that the delay was a result of a determination that filing a writ of habeas corpus prosequendum was not immediately warranted because the Government could take comfort in the fact that Lopez was already in federal custody on another charge.

The Court notes that Lopez has presented no positive evidence to support the allegation that Government deliberately and intentionally delayed executing its arrest

14

warrant in an attempt to gain an advantage over Lopez. However, even if this allegation were true, the Court also notes that the Supreme Court in <u>Barker</u> expressly stated that this type of delay may be acceptable. <u>Barker</u> at 534 (commenting that when the government is waiting for a conviction of a co-defendant whose testimony is believed to be necessary to secure the defendant's conviction, a period of "more than four years was too long . . . but may be permissible under ordinary circumstances" ). Here, the delay in executing the warrant was just under six weeks. The Court finds this period of delay acceptable, and does not assess fault.

<u>2. Escape</u>

Lopez concedes blame for this ten year period of delay. Consequently, it is the Government's burden to substantiate the fact that it conducted its investigation with reasonable diligence. Based on the testimony of Detective Sanchez and the ATF's investigative report that the Government submitted at the hearing, the Court finds that the Government met its obligation to use reasonable diligence to search for Lopez during the ten years that Lopez was a fugitive from justice. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Villareal</u>, 613 F. 3d 1344, 1352 (11th Cir. 2010) (concluding that when a defendant purposefully evades law enforcement, conducting ground investigations; annually monitoring national databases such as NCIC and AutoTrack; and following up on leads constitute diligent efforts to arrest a defendant.) Because the Government has substantiated its significant efforts to procure Lopez for prosecution, the Court holds that Lopez's evasive conduct during this period of delay weighs heavily against Lopez.

<u>3. Post-Escape</u>

During the hearing, the Government conceded negligence for the final two years

15

of the delay.  The attorney for the Government represented that the United States Marshal Service should have noticed that there was an outstanding arrest warrant against Lopez when it arrested him in Houston, Texas in December 2008.  The Government also conceded that the ATF agent in charge of the investigation should have noticed that Lopez was incarcerated when a routine check on the warrant returned a "hit" on Lopez in April 2009.  As such, this period of delay weighs heavily against the Government.

Assessing all three periods of delay collectively, the Court concludes that the delay properly weighs against the Lopez.  Here, Lopez is responsible for 10 years of the delay, while the Government is responsible for just over two years of the delay.  Lopez's intentional and evasive conduct, therefore, counterbalances and outweighs the negligence on the part of the Government.  Furthermore, Lopez should have anticipated that his escape would create circumstances that would frustrate the Government's attempt to procure him for prosecution.

### C. Defendant's Assertion of His Right to a Speedy Trial

In assessing the third Barker factor, the Supreme Court determined that although it is the primary responsibility for the government and the courts to bring the defendant to trial, "this does not mean . . . that the defendant has no responsibility to assert his right" to a speedy trial.  Barker, 404 U.S. at 530.  Specifically, it stated,  while "the defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right[,] . . . the failure to assert that right will make it difficult for a defendant to prove that he was denied a speedy trial right."  Id.

16

According to Lopez, "from all times from becoming officially aware of [the] detainer, [he] has made a good faith attempt to have these charges resolved." Motion at 10. He insists that upon receiving notice of the detainer, he "promptly" and "repeatedly" informed prison authorities of his desire for a speedy trial. Id. at 11. Additionally, Lopez contends that when he failed to find relief "internally," he sought direct assistance from the United States Attorney's Office in the Southern District of Florida, writing two letters, over the span of six months, in which he also invoked his right.[13] Id. at 10. Similarly, at the hearing, Lopez argued that he should be credited with asserting his right to a speedy trial, because at the very least, the Government did not initiate its prosecution until [the defendant] filed the instant motion.

In light of Mr. Hernandez's testimony, however, this Court finds that Lopez at least knew of the indictment as of late 1998.[14] Therefore, because Lopez did not seek a speedy trial until after he received the detainer over ten years later, the Court concludes that Lopez did not timely assert his right to as speedy trial. Accordingly, this factor weighs heavily against Lopez.

### D. Prejudice to the Defendant

Regarding the final factor in the Barker analysis, prejudice to the defendant, the Court must evaluate whether a defendant has shown that he has suffered prejudice as a result of the post-indictment delay. Typically, a defendant must show that he has

---

[13]    The United States Attorney's Office has no record of Lopez's letters on file. Response at 3.

[14]    The Court makes no finding whether Lopez knew of the indictment before his escape from Eglin, however he certainly knew of the indictment in late 1998 and did nothing to assert his right to a speedy trial for over ten years.

suffered actual prejudice in order to prevail on a Sixth Amendment claim. However, in limited circumstances, the defendant may be able to use presumptive prejudice in order to prevail on a Sixth Amendment claim.

Where a demonstration of particularized prejudice is required, the Supreme Court in Barker explained that this factor "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532. The Court then identified three such interests: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. Id. "Of these," the Court reasoned, "the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." Id.

Reaffirming Barker, the Supreme Court later reiterated:

> [The] impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. And though time can tilt the case against either side, one generally cannot be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of trial in ways that neither party can prove or, for that matter identify.

Doggett, 505 U.S. at 655. Therefore, in the absence of actual prejudice, prolonged negligence on the part of the government, will compel relief unless that presumption of prejudice is either "extenuated, as by the defendant's acquiesce, or persuasively rebutted by the government." Doggett at 658. This is especially true when the government's negligence is "egregious" and the delay is "extraordinary." Id.

a. Lopez Argues He Has Suffered Actual Prejudice

18

In this case, Lopez contends that "he has been prejudiced" with regard to all three of the interests the Supreme Court identified. Motion at 12. To the degree that he details the prejudice, he contends that 1) he has been incarcerated and therefore has been prevented from working on any meaningful defense, id., and 2) he has been denied the opportunity to be sentenced to a concurrent term of imprisonment should he be convicted, id. at 7.

In response, the Government argues that the facts alleged in the Motion are insufficient as a matter of law to establish that Lopez has incurred any actual prejudice. Response at 8. In particular, the Government argues that Lopez's generalized claims regarding his inability to prepare for trial do not qualify as an impairment to his defense. Id.

The Court agrees. Lopez has not alleged any kind of prejudice that holds up to scrutiny. See United States v. Loud Hawk, 474 U.S. 302, 315 (1986) (a "possibility of prejudice is not sufficient to support" a finding that speedy trial rights have been violated.); see also United States v. Villareal, 613 F. 3d 1344, 1356 (11th Cir. 2010); Rayborn v. Scully, 858 F. 2d 84, 93 (2d Cir. 1988).

First, regarding incarceration, while it is true that Lopez has been incarcerated leading up to the trial date, his incarceration is a function of his previously imposed prison sentences from his earlier conviction in the Southern District of Florida, and his escape conviction in the Northern District of Florida. Lopez's incarceration, therefore, does not qualify as "pretrial incarceration" because his liberty interests have not been restrained as a result of the post indictment delay. As such, the Court rejects this claim of actual prejudice.

19

Second, regarding the opportunity to be sentenced to a concurrent term of imprisonment, this type of prejudice is merely speculative, as the opportunity for serving a concurrent sentence has yet to be lost. Furthermore, there is no right to be sentenced to concurrent time should Lopez be convicted on the instant charges. As such, the Court also rejects this claim of actual prejudice.

### b. Lopez Argues That He Has Suffered Presumptive Prejudice

In the alternative, perhaps anticipating that Lopez's claims would be insufficient to substantiate a finding of actual prejudice, at the hearing, Lopez contended he did not need to demonstrate actual prejudice in order to prevail on his Sixth Amendment claim. Lopez argued that pursuant to the Supreme Court's holding in Doggett, he is relieved of the requirement to make a particularized showing of prejudice because the government's conduct over the final two years of delay amounted to "serious" and "egregious" negligence. Specifically, Lopez argued that according to the Fifth Circuit's case, Robinson v. Whitley, 2 F. 3d 562, 569 (1993), Doggett requires that "when the government's conduct is neither diligent nor malicious, but simply negligent, the court must determine what portion of the delay is attributable to the government's negligence and whether this negligent delay is of such a duration that prejudice to the defendant should be presumed." But recognizing that Doggett does not definitively state whether a delay of negligence less than six years will ever serve to relieve a defendant from showing specific prejudice, Lopez additionally argued that prejudice shall be presumed in this case because in this Circuit, the Court of Appeals has held that a two-year post indictment delay alleviates the defendant's obligation to make a showing of specific prejudice where the Government's negligence was the sole source of the delay, and that

negligence was "intolerable." Ingram, 446 F. 3d 1332, 1336 (11th Cir. 2006).

Lopez's reliance on Ingram, however, is misplaced.  The Eleventh Circuit holds that whether a defendant is required to make a particularized showing of prejudice is dependant on a fact specific inquiry.  See United States v. Clark, 83 F. 3d 1350, 1354 (1996) ("There is no hard and fast rule to apply here, and each case must be decided on its own facts.")

Indeed, this case is distinguishable from Ingram.  First, in Ingram, there was no evidence that the defendant knew of the indictment or that he had intentionally evaded the government's efforts to apprehend him.  446 F. 3d at 1337.  Second, in Ingram, the two year delay in prosecuting the defendant was due solely to the government's weak attempts to pursue him.  Id. at 1339.  Third, Ingram specifically highlights that the delay that can be tolerated for ordinary street crimes is considerably less than for a serious complex conspiracy charge. . ." Id.

In this case, Lopez has been charged in a complex conspiracy involving a criminal enterprise to kidnap and extort drug traffickers.  The Government was the sole source of negligence only for the final two years of the delay, a small portion of the entire 12-year delay; and that two-year delay is a direct consequence of foreseeable confusion created from Lopez's escape.  Most importantly, Lopez knew of the indictment during most, if not all, of the ten years he was a fugitive.  As such, the Court also rejects a claim of presumptive prejudice; and the final Barker factor weighs against Lopez.

### E. Balancing the Barker Factors

Although there is no evidence that the Government had any intention to delay Lopez's trial in order to obtain a tactical advantage, the Government concedes that it

21

negligently caused an unnecessary delay in effecting Lopez's arrest on the indictment for a two-year period, beginning when Lopez returned to federal custody in December 2008. That delay, however, although unfortunate, must be weighed against Lopez's intentional conduct.

The Court cannot ignore the fact that Lopez escaped from a federal facility, frustrated the attempts of law enforcement to procure his presence for prosecution, and knew of the outstanding indictment against him. As such, on balance, the Court finds Lopez's desire for a speedy trial has been negated by his conduct for the ten years prior to the period of the Government's negligence. Therefore, Lopez's Motion to dismiss the indictment for a violation of his speedy trial right under the Sixth Amendment will be denied.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Lopez's Pro Se Motion to Dismiss with Prejudice the Indictment for Violation of the Speedy Trial Clause of the Interstate Agreement on Detainers Act and Speedy Trial Under Sixth Amendment of the U.S. Constitution [DE 1483] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that the remaining pro se motions are **DENIED** as **MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11 day of August, 2011.

JAMES I. COHN
United States District Judge

22

Copies furnished to:
Counsel of record via CM/ECF